IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

THE ESQUIRE GROUP, INC.,

                Plaintiff,

v.                                        CIVIL ACTION NO.   3:14-24972

COLUMBIA GAS TRANSMISSION, LLC,
a Delaware limited liability company, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion to Dismiss Complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, ECF No. 7. For the foregoing reasons, the Court **DENIES** Defendants' motion.

    **I.**      **Background**

Plaintiff, Esquire Group, Inc., raises a breach of contract claim related to two written express easements involving Defendants' BM-74 natural gas transmission pipeline. ECF No. 4 ¶¶ 29–50.[1] Plaintiff operates a golf course and residential community located near the village of Barboursville, Cabell County, West Virginia. *Id.* ¶ 9. Defendant Columbia Pipeline is the successor in interest to a pipeline easement across Plaintiff's property and right of way agreement dated December 20, 1956 ("1956 Easement"). *Id.* ¶ 10; ECF No. 8 at 3. In relevant part, the 1956 Easement provides:

---

[1] After original filing in the Bankruptcy Court, ECF No.4, on August 21, 2014, this Court granted Defendants' Consent Motion to Withdraw Reference of Adversary Proceeding.

> [T]he right, privilege and authority for the purposes of laying, constructing, maintaining, operating, altering, repairing, removing, changing the size of and replacing pipe lines (with fittings, tie-overs and appliances, including Cathodic Protection equipment) for the transportation of oil, gas, petroleum products or any other liquids, gases or substances which can be transported through pipe lines, . . . the Grantee to have the right to select, change or alter the routes under, upon, over and through lands which the [Grantor] owns or in which the [Grantor] has an interest . . .
>
> Grantee has the right to lay, construct, maintain, operate, alter, repair, remove, change the size of and replace at any time or from time to time one or more additional lines of pipe, said additional lines not necessarily parallel to any existing line laid under the terms of this agreement . . .
>
> The Grantee shall have all other rights and benefits necessary or convenient for the full enjoyment or use of the rights herein granted, including, but without limiting the same to, the free right of ingress and egress over and across said lands.
>
> To have and to hold the said rights, privileges and authority, unto said Grantee, its successors and assigns, until such pipe line be constructed and so long thereafter as a pipe line, telephone line, telegraph line or electric transmission line is maintained thereon; and the undersigned hereby bind themselves, their heirs, executors and administrators (and successors and assigns) to warrant and forever defend all and singular said premises unto the Grantee, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

Ex. A, ECF No. 4. Consistent with the terms of the 1956 Easement, Defendants' predecessor in interest installed an eighteen inch high-pressure pipeline. ECF No. 4 ¶ 10. Defendants continue to use portions of the 1956 Easement as an anode in a cathodic protection system for the BM-74 pipeline. Declaration of Timothy L. Sweeney, ECF No. 8-1 ¶ 5.

On August 6, 1974, Plaintiff and Defendants entered into a second right of way agreement, granting a second easement across Plaintiff's property ("1974 Easement"). ECF No. 4 ¶ 11; ECF No. 8 at 4. Plaintiff alleges that Defendants drafted the 1974 Easement and attached Plat Plan and that Defendants' stated purpose for the 1974 Easement was to remove a portion of the 1956 Easement and replace it with a new pipeline located along the berm of the Guyandotte River.

Affidavit of Joe C. Midkiff, ECF No. 9-5 ¶¶ 5–10. As quoted by Defendants in their supporting memorandum, the 1974 Easement provides:

> [T]he right to lay, maintain, operate and remove a pipe line for the transportation of gas, and appurtenances, including cathodic protection, necessary to operate said pipe line over and through its lands . . .
>
> Included and also granted as part of this easement is the rights of ingress and egress to and from the same, together with, where necessary and convenient, the right to haul over the lands traversed by this easement such pipe and material needed in the construction of pipelines on any adjoining lands.

ECF No. 8 at 4 (quoting Ex. B, ECF No. 4,). Defendants allow the ellipses following the first quoted sentence to substitute for language that is unmistakably relevant to resolving the instant dispute. The omitted sentence provides:

> Attached to and made a part of this agreement is a "Plat Plan" for "ESQUIRE COUNTRY CLUB" which shows the center line location of the right-of-way granted for this 18″ Pipeline and also shows a section of Columbia's 18″ pipeline "To be abandoned".

Ex. B, ECF No. 4. In lieu of providing this key contractual language, Defendants offered their own explanation of what the attached Plat Plan shows. Specifically, Defendants summarized the Plat Plan as showing "the 'Possible Relocation of 18″ High Pressure Gas Line,' and portions of the Original BM-74 to be administratively abandoned from a regulatory standpoint." ECF No. 8 at 4.

Upon its own review, the Court further observes that the attached Plat Plan also (1) variously refers to the "Possible Relocation" quoted by Defendants as the "Proposed Relocation of Line BM-74" and (2) has cross-hatches drawn over a segment of the earlier right-of-way with the notation "18″ gas pipeline to be abandoned." Ex. C, ECF No. 16-3. However, the Court is unable to identify any reference on the Plat Plan to administrative abandonment from a regulatory standpoint. Similarly, the Court finds no language in the right of agreement itself mentioning administrative abandonment from a regulatory standpoint.

According to Plaintiff, the 1956 Easement pipeline is now fifty-eight years old, and there is subsidence indicative of subsurface instability along the section of the 1956 Easement pipeline at issue here. ECF No. 4 ¶¶ 42–43. As explained in the affidavits of Mr. Joe C. Midkiff and Mr. Joseph Q. Midkiff, Plaintiff further claims that Defendant has failed to maintain areas of both the 1956 Easement and the 1974 Easement that are "outside the manicured golf course areas which are passable with a vehicle or by foot," allegedly including a failure to inspect areas of subsidence. Ex. E, Affidavit of Joe C. Midkiff, ECF No. 9-5 ¶¶ 13–15; Ex. D, Affidavit of Joseph Q. Midkiff, ECF No 9-4 ¶¶ 4–7; ECF No. 4 ¶¶ 42–43.

Plaintiff further alleges that, as evidenced by a recent explosion of a 20″ high pressure pipeline owned by Defendants and findings of a subsequent investigation by the National Transportation Safety Board ("NTSB"), Defendants have a common course of corporate policy, pattern, practice, and conduct of similar inspection, maintenance, evaluation, operation, and analysis that result in unsafe pipeline conditions. ECF No. 4 ¶¶ 16–17.

Plaintiff asserts that Defendants are in breach of contract for: (1) failing to abandon the section of the 1956 pipeline identified as "to be abandoned" in the 1974 Easement; and (2) failing to maintain both the 1956 Easement and the 1974 Easement. Plaintiff seeks relief in the form of rescission of the contractual easements and right of way agreements, or in the alternative, damages for breach of contract.

## II.     Discussion

A motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *Id.* (citation omitted).

When considering a motion to dismiss, a court should (1) "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . .," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and then (2) "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

For the first step, the complaint must provide the plaintiff's "grounds of . . . entitlement to relief" in more factual detail than mere "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

For the second step, a court must take the factual allegations in the complaint as true, and the complaint must be viewed in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570 (internal quotation marks omitted). Plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

Under West Virginia law, a breach of contract claim requires that a plaintiff allege: (1) the existence of a valid, enforceable contract; (2) that the plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties or obligations under the contract; and (4) that the plaintiff has been injured as a result. *Wince v. Easterbrooke Cellular Corp.*, 681 F.Supp.2d

688, 693 (N.D. W.Va. 2010) (citing *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F.Supp.2d 694, 730 (S.D. W.Va. 2009).

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syllabus Point 1, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 128 S.E. 626, 628 (W.Va. 1962). "The language of the instrument itself, and not surrounding circumstances, is the first and foremost evidence of the parties' intent." *Sally-Mike Properties v. Yokum*, 332 S.E.2d 597, 601 (W.Va. 1985). "However, when a contract is ambiguous, it is subject to construction." *Estate of Tawney v. Columbia Natural Resources, LLC*, 633 S.E.2d 22, 28 (W.Va. 2006). "A contract is ambiguous when it is reasonably susceptible to more than one meaning in light of the surrounding circumstances and after applying the established rules of construction." *Williams v. Precision Coil, Inc.*, 459 S.E.2d 329, 342 n.23 (W.Va. 1995).

In resolving uncertainties or ambiguities, the parties urge the Court to move in opposite directions. On one hand, Defendants point to *Brewer v. Yellow Poplar Lumber Co.*, 130 S.E. 454 (W.Va. 1925), in support of the proposition that "to the extent a right-of-way agreement is ambiguous, such ambiguity is to be resolved against the grantor." ECF No. 8 at 7 (citing *Brewer*, 130 S.E.2d at 456 ("[W]here the language of the deed is ambiguous, it will be given an interpretation most favorable to the grantee.")). Though there has been no negative treatment of *Brewer*, there also do not appear to be any cases at all that have cited to *Brewer* in the almost ninety years since its issuance. On the other hand, Plaintiff provides case language that "[u]nder our law, 'uncertainties in an intricate and involved contract should be resolved against the party who prepared it.'" *Estate of Tawney v. Columbia Natural Resources, LLC*, 633 S.E.2d 22, 29 (W.Va. 2006) (citing *Charlton v. Chevrolet Motor Co.*, 174 S.E. 570 (1934).

Here, Plaintiff has stated enough facts to plausibly make out its breach of contract claim. First, the pleadings establish that there is at least one valid and enforceable contract between the parties. Plaintiff and Defendants both direct the Court's attention to two contracts. The first concerning the 1956 Easement and the second concerning the 1974 Easement. The parties agree that the 1974 agreement is a valid, enforceable contract, but disagree regarding the continued enforceability of the 1956 agreement.

Plaintiff asserts that the plain language of the 1974 Easement expresses an intention by Defendants to abandon a specifically identified portion of the 1956 Easement. Defendants instead argue that both easements remain in effect and expressly authorize Defendants' actions. Though there is disagreement regarding the effect of the later agreement on the 1956 Easement, at the very least, the later 1974 Easement agreement is valid and enforceable.

Whether one or both of the contracts remains valid and enforceable, either standing alone would confer an obligation on Defendants to maintain the easements burdening Plaintiff's property. Furthermore, it is plausible that the language included in the 1974 Easement, which was drafted by Defendants and supported by the attached Plat Plan, supports Plaintiff's contention that the 1974 Easement included an obligation on the part of the Defendants to abandon a section of the earlier pipeline.

Second, facts alleged in the pleadings, taken as true, establish that Plaintiffs have performed their obligations under both agreements. The relevant contracts only require that Plaintiff allow access to the areas granted under the respective easements. Plaintiff claims to have fulfilled its contractual obligations with respect to either agreement, and neither party has alleged any facts that would suggest otherwise.

Third, facts alleged in the pleadings plausibly establish that Defendants may have breached their duties under the contracts. With respect to the alleged failure to maintain the easements, as supported by affidavits, Plaintiffs have alleged sufficient facts, taken as true, suggesting that the Defendants have failed to maintain areas of the 1956 Easement that are not readily accessible by vehicle or by foot due to overgrowth. Plaintiff further alleges that Defendants have failed to adequately inspect these areas, potentially creating hazardous conditions.

With respect to the alleged failure to abandon a segment of the 1956 Easement, Defendants argue that the 1974 Easement did not include an obligation to abandon or remove a segment of the 1956 Easement, and that Defendants' actions in continuing to use that segment of the 1956 Easement are consistent with the terms of the 1956 Easement, which remains in full effect. Defendants first rely on *Toler v. Merritt*, No. 12-0394, 2013 WL 2149858 at *2 (W. Va. May 17, 2013) (unpublished opinion), for the proposition that "the owner of an easement by grant cannot lose that easement by his mere nonuse." As an unpublished opinion by the Supreme Court of Appeals of West Virginia, *Toler* has "no precedential value and for this reason may not be cited in any court of this state as precedent or authority, except to support a claim of *res judicata*, collateral estoppel, or law of the case." *Pugh v. Workers' Compensation Comm'r*, 424 S.E.2d 759, 762 (W. Va. 1992).

Instead, the Court looks to *Moyer v. Martin*, 131 S.E. 859 (W. Va. 1926), wherein the Supreme Court of Appeals of West Virginia opined that "it is universally held that mere [nonuse] of an easement by grant, however long, will not extinguish the right, unless otherwise provided by statute or by provision in the grant itself." 131 S.E. at 861 (citing 19 C.J. p.942; *Warren v. Syme*, 7 W. Va. 474 (W. Va. 1874). Furthermore, an easement by grant may be lost "by abandonment, not by mere [nonuse], but by proofs of an intention to abandon; or, of course, by deed or other

instrument in writing." *Id.* Addressing abandonment of a prescriptive easement, the Supreme Court of Appeals has further explained that "[i]t is the burden of the party asserting the absence of an easement by prescription to prove abandonment by clear and convincing evidence." *Walls v. DeNoone*, 209 W.Va. 675, 550 S.E.2d 653 (W.Va. 2001). (citations omitted).

While acknowledging that mere nonuse does not amount to abandonment, here, Plaintiff alleges something more than mere nonuse: Plaintiff alleges that the 1974 Easement provides both proof of an intention to abandon and a contractual obligation to abandon a segment of the original pipeline. Defendant maintains that the language of the 1974 Easement speaks only to the intent to administratively abandon that segment for regulatory purposes, but has offered no facts supporting the assertion that "to be abandoned" should be understood to carry that considerably more specialized meaning. Furthermore, non-binding case law offered by Defendant is readily distinguishable. In *ETC Texas Pipeline, Ltd v. Payne*, No. 10-11-00137-CV, 2011 WL 3850043 (Tex.App.—Waco August 31, 2011) (unpublished memorandum opinion), there does not appear to have been any communication by the grantee, written or otherwise, suggesting that the pipeline at issue was "to be abandoned." Similarly, in *Guzzetta v. Texas Pipeline Co.*, 477 So.2d 1221 (La. Ct. App. 1985), *writ granted*, 479 So.2d 913 (La. 1985), the court noted that there was no written renunciation as required under Louisiana law that would provide Plaintiff with a cause of action for removal of an abandoned pipeline. Given the plain meaning of the phrase "to be abandoned" and the absence of support—factual or otherwise—for a contrary reading, the complaint provides sufficient factual support for the alleged breach of Defendants' contractual duties.

Fourth, the pleadings provide facts sufficiently alleging some injury to Plaintiff as a result of Defendants' alleged breach. The scope of injury will ultimately depend on the ability of Plaintiff to offer proof at trial sufficiently supporting breach of contract under both the failure to maintain

and failure to abandon or remove theories. Under the first theory, injury alleged includes subsided sections along the 1956 Easement. Under the second theory, injury might further include interference with development plans. Accordingly, Plaintiff has alleged facts, which, taken as true, plausibly state a claim for breach of contract for the alleged failure to maintain the easements as well as the alleged failure to abandon a designated portion of the original easement.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: October 7, 2014

_____
ROBERT C. CHAMBERS, CHIEF JUDGE